IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MANDA RICHARDS, *et al.*,            *

     Plaintiffs,            *

     v.            *            Civil Action No. 8:20-cv-03683-PX

SERVIS ONE, INC. d/b/a            *
BSI FINANCIAL SERVICES,
                   *

     Defendant.

                      ******

**MEMORANDUM OPINION**

Plaintiffs Manda Richards ("Richards") and Gloria Johnson ("Johnson") have filed a

Class Action Complaint against Defendant Servis One, Inc. d/a/ BSI Financial Services ("BSI")

alleging violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA");

its implementing regulations known as "Regulation X" codified at 12 C.F.R. §§ 1024.1 to

1024.5; and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f.  ECF No. 12.

Defendant BSI has moved to dismiss the Amended Complaint with prejudice and to strike the

class action allegations.  ECF No. 15.  The motion is fully briefed, and no hearing is necessary.

*See* Loc. R. 105.6.  For the reasons below, the Court GRANTS Defendant's motion.

     **I.**       **Background**

Plaintiffs have brought claims under RESPA and the FDCPA individually and on behalf

of two putative classes.  This Court's task of summarizing the relevant facts and various claims

is complicated by the kitchen-sink approach that Plaintiffs have taken in drafting the Amended

Complaint.[1]  The Court has nonetheless endeavored to sort the wheat from the chaff and

summarize the facts pertinent to the specific claims.

### A.    Manda Richards

On August 31, 2005, Richards purchased property in Montgomery County, Maryland and

took out a home mortgage loan for $159,030 from Home Mortgage Acceptance, Inc. ("Richards

Loan").  ECF No. 12 ¶ 23.  The Richards Loan was sold on April 4, 2014 to Primestar.  *Id.* ¶ 24.

Primestar then sold the loan to Brougham on October 26, 2016, and Brougham to Morgan

Stanley Mortgage Capital Holdings LLC ("Morgan Stanley") on October 8, 2019.  *Id.* ¶ 26.

From October 13, 2016 until approximately November 1, 2019, BSI acted as the mortgage

servicer for the Richards Loan, after which Shellpoint became the servicer.  *Id.* ¶¶ 27, 29.

Richards filed for Chapter 13 bankruptcy in April 2018.  *Id.* ¶ 28; *see also Richards v.

Grisgby*, No. LS-18-15772, ECF No. 1 (Bankr. D. Md. Apr. 30, 2018).  In her bankruptcy

petition, she attests that her pre-petition mortgage arrears totaled $15,000.[2]  *See id.*, ECF No. 2 at

3.  On March 16, 2019, the bankruptcy court entered a stipulated order to modify the automatic

stay provision as applied to the Richards Loan.  ECF No. 15-4 at 3.  The stipulation set forth

certain agreed-upon monthly payments on the mortgage loan "adjusted for escrow," as well as an

agreement to resolve pre- and post- bankruptcy petition arrears.  *Id.*

On September 28, 2019, BSI sent to Richards and the bankruptcy court an Annual

Escrow Account Disclosure Statement ("Disclosure Statement") as required by law.  ECF No. 12

¶ 30; ECF No. 15-3; *see* 12 C.F.R. § 1024.17(i).  According to Richards, the Disclosure

---

[1] This Court has previously admonished counsel for similarly styled pleadings.  *See Reyes v. Manchester Gardens*, No. PX-19-2643, ECF No. 53 at 4; *see also Brooks v. Brown*, No. PX-19-3305, ECF Nos. 29 & 42.

[2] The Court may properly take judicial notice of Richards' representation in her bankruptcy petition of the amounts she owed BSI.  *See Goldfarb v. Mayor of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Brown v. Ocwen Loan Servicing, LLC*, No. PJM 14–3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. App'x. 200 (4th Cir. 2016).

Statement reflects that BSI maintained a current escrow balance of $10,093.79, which exceeded the "amount BSI was permitted to collect" because it was greater than the amount "actually required for the payment of taxes, insurance premiums, and other charges."  ECF No. 12 ¶ 30. Richards also speculates that BSI "falsely assumed" she "would not make her next month's payment" and thereby demanded "future payments in excess of what actually [wa]s necessary and required."  *Id.* ¶ 31.  The Amended Complaint lastly takes issue with BSI reporting to Shellpoint that Richards maintained a negative escrow balance of $5,751.22 at the time Shellpoint took over as servicer.  *Id.* ¶ 32.

BSI has provided the Court with the Disclosure Statement which is incorporated by reference into the Amended Complaint.  *See* ECF No. 15-3; ECF No. 12 ¶ 30; *see Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).  The Disclosure Statement is broken into two sections.  The first, entitled "Anticipated Payments from Escrow 11/01/2019 to 10/31/20," includes a table of anticipated escrow amounts and required payments, to arrive at a reported "escrow surplus" of $10,093.79 for the coming year.  ECF No. 15-3 at 2.  This section also includes the following disclaimer:

> Our records indicate that you have filed for Bankruptcy protection. **As a result of your Bankruptcy filing, escrow account deficiencies prior to your filing date have been removed from calculation of your analysis, and they are now reflected as amounts due within your pre-petition arrearage.** This Escrow Analysis Statement was prepared under the assumption that all escrow payments have been made in the amount required each month. **The surplus funds indicated above <u>are not an accurate reflection</u> of your escrow account because no surplus funds will exist until all amounts are received towards your pre-petition arrearage**.

*Id.* (emphasis added).

The second section of the Disclosure Statement, entitled "Account History," provides a payment breakdown of actual escrow charges which evidently were not paid from November 1,

2018 through September 28, 2019.  *Id.* at 3.  It also clearly reports an ending negative escrow

balance of $5,751.22 as of September 2019, the same month the statement issued.  *Id.* at 2–3.

The top of this section read prominently, in all capital letters:

> THIS HISTORY STATEMENT COMPARES YOUR PRIOR
> ANALYSIS CYCLE PROJECTED ESCROW ACTIVITY TO
> THE ACTUAL ESCROW ACTIVITY BEGINNING 11/01/2018
> AND ENDING 10/31/2019. IF YOUR LOAN WAS PAID-OFF,
> ASSUMED OR TRANSFERRED DURING THIS PRIOR CYCLE,
> OR THE COMPUTATION YEAR IS BE[]ING CHANGED,
> ACTUAL ACTIVITY STOPS AT THAT POINT. THIS
> STATEMENT IS INFORMATION ONLY AND REQUIRES NO
> ACTION ON YOUR PART.

*Id.* at 3.  From this Disclosure Statement, the Amended Complaint alleges that Richards in fact

maintained an escrow *surplus*, which BSI neither refunded when it transferred the loan to

Shellpoint, or otherwise disclosed to her "what it did" with these sums.  ECF No. 12 ¶ 33.

### B.      Gloria Johnson

Plaintiff Johnson purchased property on August 31, 2005, with a home mortgage loan

from American Home Mortgage Acceptance, Inc. for $159,030 ("Johnson Loan").  *Id.* ¶ 40.

On May 31, 2016, Johnson filed for Chapter 13 bankruptcy.  *Id.* ¶ 41.  At this time,

Ditech Financial was the mortgage servicer for her loan.  *Id.* ¶ 42.  The Johnson Loan was sold in

November 2018 to Chalet Properties III, LLC, at which point BSI became the servicer.  *Id.*  BSI

stayed on as the servicer when the loan was sold to US Bank Trustee National Association in

2019.  *Id.* ¶ 43.

According to Johnson, her total escrow amount from 2019 to 2020, including

homeowner's insurance and property taxes, was $2,493.01.  *Id.* ¶ 45.  On June 25, 2019, BSI

informed Johnson she had an escrow surplus of $3,801.95.  *Id.* ¶ 46.  BSI then sought relief from

the bankruptcy court in January 2020, claiming Johnson had missed six months of post-petition

mortgage payments and had an escrow deficiency of $1,112.79. *Id.* ¶ 47. BSI and Johnson settled this dispute, and BSI withdrew its motion. *Id.* ¶ 48.

On June 25, 2020, BSI sent Johnson an annual escrow account disclosure statement indicating she had an escrow surplus of $1,874.69. *Id.* ¶ 49. Johnson alleges this notice was "inaccurate because it falsely assumed [she] would not make her next month's payment," and that the amount exceeded that which BSI was permitted to collect pursuant to the mortgage loan terms. *Id.* ¶ 51. And because this surplus exceeded the amount needed to pay taxes, insurance premiums, and "other charges" in connection with her property, Johnson argues BSI "collected escrow payments … in violation of [RESPA]." *Id.*

### C.    Putative Classes

Plaintiffs Richards and Johnson bring the same claims on behalf of two putative classes. *Id.* ¶ 63. The first, the "BSI RESPA Class," includes all individuals who hold a mortgage serviced by BSI in the last three years and for which BSI has issued an annual escrow account statement disclosing sums collected "in excess of the sums actually required for taxes, insurance premiums, and other escrow payments … in a surplus amount in excess of $100." *Id.* ¶ 63a. Richards and Johnson are the named plaintiffs for the BSI RESPA Class. *Id.* ¶ 64. The second class, the "BSI FDCPA Class," are all individuals whose mortgage loan was transferred by BSI within the past year, and for which BSI reported a surplus in the individual's escrow amount which was not transferred to the next servicer. *Id.* ¶ 63b. Richards is the named plaintiff for the BSI FDCPA Class. *Id.* ¶ 64.

### D.    RESPA and FDCPA claims

In Count I, the Plaintiffs aggregate all RESPA claims against BSI. ECF No. 12 at 22–25. The Plaintiffs assert that BSI violated sections 2605(g) and 2605(k)(1) of RESPA by collecting

escrow payments "in excess of the amount [it] was permitted to collect" or that was "actually required for the payment of taxes, insurance, premiums, and other charges"; and then retaining those payments "for its own benefit." *Id.* ¶¶ 30, 51, 85, 87; *see* 12 U.S.C. §§ 2605(g), (k)(1). Plaintiffs also allege that BSI violated these same RESPA provisions by issuing annual escrow account statements under the "false[] assum[ption] they would not make the next month's payment due which created excess sums due in the accounting of their loan."  ECF No. 12 ¶ 86.

Under Count II, Plaintiff Richards, individually and on behalf of the BSI FDCPA Class, alleges that BSI maintains a "statutory dut[y]" to transfer escrow sums collected to "transferee servicers when the investor/owner of the loan engaged another to service and collect upon the loan." *Id.* ¶ 93.  As in Richards' case, BSI transferred her mortgage loan to another servicer but did not also transfer the supposed escrow surplus.  *Id.* ¶ 95.  By failing to refund the excess escrow funds or transfer them to the next servicer, BSI allegedly engaged in "unfair or unconscionable" debt-collection practices in violation of the FDCPA.  15 U.S.C. § 1692f.

BSI now moves to dismiss the Amended Complaint for failure to state a claim.  ECF No. 15.  The Court considers each argument in turn.

## II.    Standard of Review

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (citations omitted).  The Court, however, need not credit conclusory statements or legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  A motion to dismiss for failure to state a claim is proper, therefore, when the complaint does not include factual allegations that render the plaintiff's claims facially plausible or permit the reasonable inference that the defendant is liable for the alleged misconduct.  *See id.*

When ruling on a motion to dismiss, the Court may consider materials attached to the complaint or expressly incorporated by reference without transforming the motion into one for summary judgment.  *See* Fed. R. Civ. P. 10(c); *Goines v. Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir 2016).  The Court may also consider materials attached to a motion to dismiss, provided they are integral to the complaint and authentic.  *See Goines*, 822 F.3d at 166; *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  The Court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quotation omitted).

### III.    Discussion

#### A.    RESPA Claims (Count I)

In enacting RESPA, Congress aimed to provide "consumers … with greater and more timely information on the nature and costs of the [real estate] settlement process."  *Harrell v. Freedom Mortgage Corp.*, 976 F.3d 434, 437 (4th Cir. 2020) (quoting 12 U.S.C. § 2601(a)).  Among other things, RESPA "sanctions certain private rights of action" and "empowers federal and state regulators to enforce its dictates."  *Id.* (citing 12 U.S.C. §§ 2605(f), 2607(d), 2608(b)).  "Congress has since authorized the Consumer Financial Protection Bureau (CFPB) to administer RESPA by 'prescrib[ing] [ ] rules and regulations ... necessary to achieve [RESPA's] purposes.'"  *Id.* (quoting 12 U.S.C. § 2617(a)).

BSI seeks dismissal of the RESPA claims in their entirety. ECF No. 15-1 at 7. The crux of Plaintiffs' allegations is that BSI collected more in escrow payments than was lawfully permitted and then kept those payments instead of refunding them to Plaintiffs. *See* ECF No. 12 ¶¶ 30–31, 50–51, 79–90. Plaintiffs allege this conduct violated 12 U.S.C. §§ 2605(g), 2605(k)(1), and the following regulations: 12 C.F.R. §§ 1024.34(a), and 1024.38(b)(1)(i), (b)(1)(iv), (b)(4)(i), and (c). *See id.* As discussed below, Plaintiffs fail to state a claim under any of these provisions.

### 1.     Section 2605(g) and 12 C.F.R. § 1024.34

Turning first to section 2605(g) and its implementing regulation at 12 C.F.R. § 1024.34, section 2605(g) addresses the administration of escrow accounts as follows:

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due. Any balance in any such account that is within the servicer's control at the time the loan is paid off shall be promptly returned to the borrower within 20 business days or credited to a similar account for a new mortgage loan to the borrower with the same lender.

12 U.S.C. § 2605(g). The first part of this provision makes clear that "if a mortgage contract requires the borrower to place property-tax payments in escrow, then RESPA requires the servicer to make those tax payments on time." *Harrell*, 976 F.3d at 436 (quotation omitted). Section 1024.34(a) mirrors this timing requirement and adds several guardrails to ensure payments are made "in a timely manner, that is, on or before the deadline to avoid a penalty." 12 C.F.R. § 1024.34(a).

The second part of section 2605(g) requires the servicer to either return any remaining balance in the escrow account to the borrower or credit the balance to a "similar account for a new mortgage loan … with the same lender," once the loan "*is paid off*."  12 U.S.C. § 2605(g) (emphasis added); *see Jackson v. Standard Mortgage Corp.*, No. PJH-18-927, 2021 WL 1342971, at *6 (W.D. La. Apr. 9, 2021) (differentiating section 2609 which regulates escrow accounts during the life of the loan from section 2605(g) which applies when the loan is "paid off"); *see also Stefanowicz v. SunTrust Mortgage*, No. ARC-16-0368, 2017 WL 1079163, at *5 (M.D. Pa. Mar. 22, 2017) (merely alleging "Defendants failed to properly credit … [plaintiff's] escrow account" falls outside 2605(g) because Plaintiff did not allege "a failure to timely pay any expenses from her escrow account or a failure to timely refund any remaining balance after she paid off her loan").  The implementing regulation, 12 C.F.R. § 1024.34(b), makes clear that the servicer's obligation to refund the escrow balance only arises where the borrower has paid off the mortgage loan "in full."  12 C.F.R. § 1024.34(b).

Recognizing the limited scope of these provisions, BSI contends that Plaintiffs have failed to state a claim for relief under either section 2605(g) or 12 C.F.R. § 1024.34.  ECF No. 15-1 at 9.  BSI is correct that no part of section 2605(g) or 12 C.F.R. § 1024.34 addresses when a servicer collects escrow payments in excess of what is "actually required for the payment of taxes, insurance, premiums, and other charges," as Plaintiffs allege.  *Compare* ECF No. 12 ¶¶ 30–31, 50–51 *with* 12 U.S.C. § 2605(g); 12 C.F.R. § 1024.34(a).  Likewise, neither provision obligates a servicer to refund or transfer any escrow surplus unless the mortgage loan has been "paid off" or the parties enter into a new mortgage loan.  12 U.S.C. § 2605(g); 12 C.F.R. § 1024.34(b).  Because the statutory provisions simply do not reach the claimed misconduct, the RESPA count fails.

Rather than respond to this challenge, Plaintiffs wax poetic about the remedial purposes of RESPA and the FDCPA more broadly. *See* ECF No. 18 at 5–11. Their failure to respond to this argument alone renders the claim abandoned. *See Agomuoh v. PNC Fin. Servs. Grp.*, No. GJH-16-1939, 2017 WL 657428, at *10 (D. Md. Feb. 16, 2017) (citation omitted); *see also Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010). But because the Complaint facts, construed most favorably to the Plaintiffs, do not make out a RESPA violation under these provisions, the claim must be dismissed in any event. *See Agomuoh*, 2017 WL 657428 at *10.

### 2.      Section 2605(k) and companion regulations

Plaintiffs separately allege violations of section 2605(k)(1)(E) of RESPA. ECF No. 12 at 22–24. Under this provision, a "servicer of any federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E). Plaintiffs allege that BSI violated this provision by also transgressing several other regulatory provisions, namely 12 C.F.R §§ 1024.34(a), 1024.38(b)(1)(i), 1024.38(b)(1)(iv), 1024.38(b)(4)(i), and 1024.38(c). BSI argues that none of these regulations give rise to a viable claim under section 2605(k)(1)(E). The Court agrees with BSI.

As already discussed, Plaintiffs' issues with BSI's collection of excessive escrow amounts are not covered by 12 C.F.R. § 1024.34(a). That regulation requires servicers to make timely payments on behalf of borrowers for taxes and premiums, and to refund escrow amounts after a mortgage has been paid in full or a new mortgage agreement is reached between the same parties. But it does not impose obligations on servicers regarding escrow overages generally. *See* 12 C.F.R. § 1024.34. Nor do Plaintiffs explain how this Court could read the plain language

of this section otherwise.  Thus, even assuming that BSI collected more funds than were needed to pay taxes and other fees, it has not violated the plain language of that specific regulation.

Plaintiffs next cite several provisions within 12 C.F.R. § 1024.38.  This section requires servicers to "maintain policies and procedures that are reasonably designed to achieve" certain enumerated objectives.  *Id.* § 1024.38(a).  According to Plaintiffs, BSI failed to provide "timely and accurate disclosures" as well as "accurate and current information and documents" about their mortgage loans, violating 12 C.F.R. §§1024.38(b)(1)(i) and (b)(1)(iv).  *See* ECF No. 12 at 23.  BSI also allegedly failed to "timely … transfer all information and documents in [its] possession" regarding Plaintiffs' mortgage loans "to [the] transferee servicer in a form and manner that ensure[d] the accuracy of the information" and that allowed the "transferee servicer to comply with … [its] obligations."  12 C.F.R. § 1024.38(b)(4)(i); ECF No. 12 at 23.  Lastly, BSI apparently violated section 1024.38(c), which includes "standard requirements" for how long a servicer must retain a borrower's records on file after their loan is transferred or discharged, and which documents the servicer must maintain on file for every borrower.  *See* 12 C.F.R. § 1024.38(c).

These provisions, read collectively, require servicers to implement policies and procedures "reasonably designed to achieve" these identified objectives.  *Id.* § 1024.38(a).  But as BSI rightly contends, no private cause of action exists for violations of this regulation.  *See* 12 C.F.R. § 1024.38; *Agomuoh*, 2017 WL 657428, at *10 (citations omitted); *see also Smith v. Nationstar Mortg.*, No. RHC-15-13019, 2015 WL 7180473, at *3–4 (E.D. Mich. Nov. 16, 2015) (citing CFPB statement in notice-and-comment rulemaking that it is "restructuring the final rule so that it neither provides private liability for violations of § 1024.38 nor relies on its authorities under section 6 of RESPA to issue § 1024.38" (quotation omitted)); *Best v. Newrez LLC*, No.

GJH-19-2331, 2020 WL 5513433, at *28 (D. Md. Sept. 11, 2020) ("[B]orrowers do not,

however, have a private right of action under the Bureau's rules to enforce the requirements set

forth in § 1024.38." (quoting Mortgage Servicing Rules Under the Real Estate Settlement

Procedures Act (Regulation X), 78 Fed. Reg. 10,696, 10,818 (Feb. 14, 2013))); *Neto v.

Rushmore Loan Mgmt. Servs. Inc.*, No. DKC-16-1056, 2017 WL 896890, at *6 n.5 (D. Md. Mar.

7, 2017) (citing favorably *Agomuoh*).

Plaintiffs' silence, once again, renders the claim abandoned. *See* ECF No. 18. Whether

the claim is abandoned or otherwise not legally cognizable, it certainly fails as a matter of law.

*See Agomuoh*, 2017 WL 657428, at *10; *Ferdinand-Davenport*, 742 F. Supp. 2d at 777. Finding

no other plausible liability theory under RESPA, the Court dismisses Count I.[3]

### B.      FDCPA Claims

BSI next moves to dismiss the individual and class FDCPA claims under Count II. ECF

No. 15-1 at 14. "To establish a claim under the FDCPA, 'a plaintiff must prove that: (1) the

plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant

is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or

omission prohibited by the FDCPA.'" *Richards v. NewRez LLC*, No. ELH-20-1282, 2021 WL

1060286, at *23 (D. Md. Mar. 18, 2021) (quoting *Boosahda v. Providence Dane LLC*, 462 F.

---

[3] Buried in a footnote, Plaintiffs argue that BSI failed to seek dismissal of their RESPA claims based on
their Qualified Written Requests ("QWRs"), and so they should be permitted to pursue as a RESPA violation BSI's
purported failures as to the QWRs. ECF No. 18 at 2 n.1. But Plaintiffs' opposition, like the Amended Complaint,
litigates by obfuscation. The Amended Complaint simply did not plead this liability theory such that BSI was
placed on notice of the same. *Cf. Brooks v. Brown*, No. PX-19-3305, ECF No. 29 at 66–71 (D. Md. Dec. 6, 2019)
(burying a separate RESPA violation in a count with voluminous paragraphs and a totally different count title). And
merely because the Amended Complaint references QWRs does not make plausible a RESPA violation. Any
supposed QWR claims are dismissed, albeit without prejudice should Plaintiffs wish to refile a claim that provides a
short, plain, statement of the facts and law supporting this QWR liability theory. *See* Fed. R. Civ. P. 8(a).

App'x 331, 333 n.3 (4th Cir. 2012); citing *Webster v. ACB Receivables Mgmt., Inc.*, 15 F. Supp.

3d 619, 625 (D. Md. 2014); *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012)).

      The Amended Complaint more particularly alleges that BSI violated section 1692f of the

FDCPA as to Richards.  15 U.S.C. § 1692f.  Section 1692f prohibits a debt collector from "using

unfair or unconscionable means to collect or attempt to collect any debt."  *Id.*  "The statute

provides a list of conduct that violates the section, but it also 'allows the court to punish any

other unfair or unconscionable conduct not covered by the FDCPA.'"  *Richards*, 2021 WL

1060286, at *23 (quoting *Lembach v. Bierman*, 528 F. App'x 297, 303 (4th Cir. 2013)); *see also*

*Valle v. Westhill Exchange, LLC*, No. GJH-19-2304, 2021 WL 1117282, at *8 (D. Md. Mar. 24,

2021).

      Aside from specifying certain conduct which violates this provision, the FDCPA does not

otherwise "define what is meant by unfair or unconscionable."  *LeBlanc v. Unifund CCR*

*Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010) (quotation omitted).   Courts have interpreted

these terms consistent with their plain meaning—defining "unfair" as "marked by injustice,

partiality, or deception," and "unconscionable" as "having no conscience" and "affronting the

sense of justice, decency, or reasonableness."  *Id.* (quotation omitted).   Whether conduct is

unfair or unconscionable is assessed "through the lens of the least-sophisticated consumer."  *Id.*

      Richards alleges that BSI violated section 1692f when it "collect[ed] and report[ed] an[]

escrow surplus of over $10,000 one month and then just a few weeks later [reported] to its

successor an escrow deficit of over $5,000."  ECF No. 18 at 16; *see also* ECF No. 12 ¶¶ 95–96.

Richards further maintains that BSI never refunded a supposed escrow "surplus" or transferred it

to Shellpoint, and never "disclosed to [her] what it did with th[is] sum."  ECF No. 12 ¶ 33; *see*

*also* ECF No. 18 at 16.  This conduct, says Richards, is "quintessentially unfair and unconscionable" and violates 15 U.S.C. § 1692f.  ECF No. 18 at 16.

Richards' allegation is fatally flawed.  Although Richards argues that BSI acted unconscionably because it violated a "statutory dut[y]" to transfer any escrow overage to Shellpoint, or because BSI failed to "refund" the supposed escrow overage, Richards points to no law which imposes such a duty.  *See* ECF No. 12 ¶ 93; ECF No. 18 at 16.  Section 2609 of RESPA and its implementing regulation 12 C.F.R. § 1024.17 come closest.  *See Jackson*, 2021 WL 1342971, at *6.  But Courts increasingly have concluded that section 2609 and its implementing regulation do not give rise to a private right of action.  *See McCray v. Bank of Am., Corp.*, No. ELH-14-2446, 2017 WL 1315509, at *14–15 (D. Md. Apr. 10, 2017) (finding no private right of action under section 2609 or 12 C.F.R. § 3500.17 later recodified at §1024.17); *see also McAndrew v. Deutsche Bank Nat. Tr. Co.*, 977 F. Supp. 2d 440, 446 (M.D. Pa. 2013) (collecting cases); *Hardy v. Regions Mortg. Inc.*, 449 F.3d 1357, 1359–60 (11th Cir. 2006); ECF No. 15-1 at 11.

Likely for this reason, Richards insists her claims *do not* rely on section 2609 of RESPA but rather on section 2605(g).  *See* ECF No. 18 at 9–11, 15–16.  But again, section 2605(g) does not cover management of escrow overages generally.  *See* 12 U.S.C. § 2605(g).  It simply requires the servicer to make payments of monies kept in escrow to pay for taxes, insurance premiums and the like, and does not require returning any balance until the loan is "paid off." *Id*.  Thus, because the Amended Complaint fails to make plausible a violation of this provision, it certainly cannot establish that BSI acted unfairly or unconscionably as to the Richards Loan.  15 U.S.C. § 1692f; *cf. Kevelighan v. Trott & Trott, P.C.*, 771 F. Supp. 2d 763, 774 (E.D. Mich.

2010) ("Plaintiffs cannot avoid [the fact that section 2609 provides no private right of action] by merely alleging RESPA violations as FDCPA violations.").

Next, when viewing the complaint facts as true and most favorably to Richards, she has not made plausible the claim that BSI acted unconscionably for any other reason. *See* ECF No. 18 at 16; ECF No. 12 ¶¶ 95–96. The claim entirely rests on BSI's September 28 Disclosure Statement. Richards insists that this letter conveys an escrow surplus of $10,093.79, and so BSI's refusal to return or otherwise explain what it did with these funds is unconscionable. ECF No. 18 at 2–3, 17. But even when reading the Disclosure Statement through the lens of the least sophisticated consumer, it simply cannot be construed to communicate a positive escrow balance at the time the statement was issued. *See* ECF No. 15-3 at 2-3. Rather, the Disclosure Statement's supposed "surplus" of $10,093.79 is "anticipated" for the coming year. Further, BSI plainly advised that the amount is "*not an accurate reflection of your escrow account.*" *Id.* at 2 (emphasis added). Lastly, the Disclosure Statement makes clear that as of the month that Statement issued, September 2019, Richards was carrying a negative escrow balance of $5,751.22, a fact Plaintiff wholly ignores. *Id.* at 3. When viewing the Disclosure Statement most favorably to Richards, the Court simply cannot agree that it conveyed an actual surplus and, thus, BSI's conduct is unconscionable. ECF No. 12 ¶¶ 30, 95–96. Consequently, the claim based on this liability theory fails as a matter of law.

Ultimately, Richards has not advanced a liability theory that makes plausible BSI's actual conduct was "illegal," deceptive, or "harassing" in any way. *Mavilla v. Absolute Collection Serv., Inc.*, 539 Fed Appx. 202, 207 (4th Cir. 2013); *see also Veney*, 239 F.3d at 730 (quotations omitted). Count II, therefore, must be dismissed.

15

C.      **Dismissal with or without prejudice**

Whether to dismiss claims with or without prejudice remains well within the district court's discretion.  *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) (citation omitted)); *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985).  Although plaintiffs should generally be afforded an opportunity to amend the complaint, *Cosner v. Dodt*, 526 F. App'x 252, 253 (4th Cir. 2013), if amendment would be futile, dismissal with prejudice is warranted.  *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (finding district court did not abuse discretion in dismissing complaint with prejudice where "amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability"); *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) ("Once a court has determined that the complaint is truly unamendable, a dismissal without prejudice is of little benefit to the litigant, as the claim cannot be made viable through reformulation.").

Plaintiffs' RESPA claims brought under 12 U.S.C. §§ 2605(g) and (k)(1) are unamendable and thus dismissed with prejudice.  To the extent Plaintiffs intended to bring additional claims under RESPA, those claims are dismissed without prejudice.

As for Plaintiffs' FDCPA claims under 15 U.S.C. § 1692f, the Court has largely dismissed these claims because, as presented, they failed as a matter of law.  But the Court will not foreclose to Richards the opportunity to amend the claim, if possible.  That said, the Court underscores that any such amendment must comply with Rule 11 of the Federal Rules of Civil Procedure, to include presenting only non-frivolous legal contentions and factual averments for which counsel certifies "to the best of [his] knowledge, information and belief," "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P 11(b)(2)-(3); *cf.* ECF No. 15-3 at 3; ECF No. 15-4 at 8.

### D.      Class Action Allegations

BSI also seeks dismissal of the companion class claims.  ECF No. 15-1 at 6.  The Court has found that each of the individual RESPA and FDCPA claims fail as a matter of law. Plaintiffs have not put forward a separate liability theory as representatives of the putative classes.  Accordingly, dismissal without prejudice of the class claims is proper.[4]  *See* Fed. R. Civ. P. 23(c)(1)(a); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)); *see also Collins v. Village of Palatine*, 875 F.3d 839, 846 (7th Cir. 2017) ("When the plaintiff's own claim is dismissed, he can no longer be the class representative.  At that point, either another class representative must be found or the suit is kaput." (quotation omitted)); *Herron v. Mayor of Annapolis*, 388 F. Supp. 2d 565, 573 (D. Md. 2005), *aff'd*, 198 Fed. Appx. 301 (4th Cir. 2006); *Pelino v. Ward Mfg., LLC*, No. RDB–14–02771, 2015 WL 4528141, at *4 (D. Md. Jul. 27, 2015).

### IV.      Conclusion

For the reasons stated above, the Court GRANTS Defendant's motion to dismiss at ECF No. 15.  A separate order follows.

September 2, 2021                                    /S/
Date                                            Paula Xinis
                                            United States District Judge

---

[4] Because Plaintiffs have not made out a plausible individual claim under RESPA or the FDCPA, the Court declines to address whether Plaintiffs sufficiently alleged a "pattern or practice" by BSI of violating these statues. ECF No. 15-1 at 13; *see also Trionfo v. Bank of Am., N.A.*, No. JFM-15-925, 2015 WL 5165415, at *4 n.2 (D. Md. Sept. 2, 2015) (declining to rule on pattern and practice claims because the plaintiffs' RESPA claim failed as a matter of law); *Richardson v. Rosenberg & Assocs. LLC*, No. WDQ-13-0822, 2014 WL 823655, at *8 (D. Md. Feb. 27, 2014) (same).